**In re ENERGY COOPERATIVE, INC., Debtor,**

**ENERGY COOPERATIVE, INC., Plaintiff,**

**v.**

**PEERLESS DISTRIBUTING CO., Defendant.**

**Nos. 81 B 5811, 85 C 3545. Adv. No. 82 A 3711.**

United States District Court, N.D. Illinois, E.D.

Sept. 14, 1989.

Miller, Shakman, Nathan & Hamilton, Michael T. Hannafan, Hannafan & Handler, Jay A. Steinberg, Chicago, Ill., for plaintiff.

Jeffrey P. Carren, Ilene F. Goldstein, Chadwell & Kayser, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on Defendant, Peerless Distributing Company's ("Peerless's") motion for summary judgment. For the following reasons, Peerless's motion is granted.

### BACKGROUND

This motion arises in an ongoing series of cases brought by Energy Cooperative, Inc.'s ("ECI's") Trustee in Bankruptcy ("Trustee") for the purpose of recapturing certain payments ECI made to its creditors within the 90 days preceding its filing for bankruptcy. The Trustee claims that ECI's transfer on April 24, 1981, of $1,642,960 worth of petroleum products to Peerless, less than one month before ECI filed for bankruptcy, constituted a preferential payment within the meaning of the Bankruptcy Code and is therefore properly part of the bankrupt's estate.

The key to determining whether a debtor' payment to a creditor was preferential lies principally in when the payment in question was made. Specifically, the crucial period is the 90 days immediately preceding the debtor's filing for bankruptcy. The activities of the debtor and creditor during this 90-day period are important not only for determining for determining whether liability exists, but also for determining whether certain affirmative defenses are applicable. Since ECI filed for bankruptcy on May 15, 1981, it is important to understand what transpired between the parties from February 14, 1981 to the filing date.

February 14, 1981 found Peerless and ECI in an ongoing and long-standing business relationship. At the core of this relationship was a verbal exchange agreement. Under the agreement, the parties would periodically exchange quantities of petroleum products either by physical movement or by book transfer. Physical movement involved actually sending the product by pipeline; book transfers involved the changing of title in a specific quantity of product from one party to the other solely on the account books. Performance under the agreement did not involve balancing on a daily basis. Instead, at any given time, one party was "indebted" to the other.

The parties' exchanges for the 90 days leading up to ECI's bankruptcy filing are not in dispute. On February 14, the balance was in ECI's favor: Peerless owed ECI petroleum products worth $41,171. On February 21, Peerless signed over $824,250 worth of products to ECI in a book transfer. On February 22, ECI extinguished the debt incurred in this book transfer by physically delivering $823,137 worth of petroleum products to Peerless. Thus, at the end of February 22 Peerless owed ECI products worth $40,058. No further exchanges were made until April 21.

On April 21, ECI used a book transfer to sign over products worth $1,422,438 to Peerless. Peerless payed this debt on the same day by using a book transfer to send

back this identical amount to ECI. Later, still on April 21, Peerless used another book transfer to sign over $1,641,255 worth of products to ECI. Thus, at the end of April 21, ECI owed Peerless petroleum products worth $1,601,1977.

On April 24, ECI extinguished its debt of $1,601,197, by physically transferring $1,642,960 worth of products to Peerless. It is this April 24 exchange which the Trustee claims was preferential to Peerless and thus should be recaptured. The actual sum sought, however, is $1,601,197 because the Trustee has substracted $41,763 that Peerless paid to ECI in cash for the purpose of closing out its account after bankruptcy was filed.

In order to grasp the nature of the Trustee's argument in opposition to Peerless's motion, it is further necessary to understand that, on April 21, ECI also engaged in a book transfer with Horizon Processing Company ("Horizon"). Thus, at the same time that ECI recorded the $1,641,255 book transfer from Peerless on that date, it also recorded a book transfer of identical size to Horizon. This transfer from ECI to Horizon extinguished a debt dating from February 27, 1981.

## DISCUSSION

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). No genuine issue exists "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment may be granted if the evidence is merely colorable or is not significantly probative. *Id.* at 249–50, 106 S.Ct. at 2510–11.

When a properly supported motion for summary judgment has been made, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* The opposing party is entitled to the benefit of all favorable inferences which can reasonably be drawn from the underlying facts; however, only *reasonable* inferences will be drawn, not every conceivable inference. *DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987).

With respect to the substantive law applicable to this motion, the general principles are all found within § 547 of the pre–1984 Bankruptcy Code. 11 U.S.C. § 547 (1982) (since amended). Subsection (b), in relevant part, allows a trustee in bankruptcy to recapture any transfer of property by an insolvent debtor to a creditor as payment for a pre-existing debt which was made within the 90 days that preceded the debtor's filing for bankruptcy. 11 U.S.C. § 547(b). Such a transfer is deemed "preferential" and thus is unfair to other creditors who were not paid in the 90–day period. Subsection (c)(2), however, provides an exception to this general rule. Under § 547(c)(2), the trustee is prevented from avoiding an otherwise "preferential transfer" to the extent that such transfer was:

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

Applying these standards to this case, Peerless's entitlement to summary judgment depends upon whether the facts over which there is no genuine issue show that the transfer of April 24 satisfied the four requirements of § 547(c)(2). The parties agree, moreover, that all but one of the requirements have been met. The only issue is whether ECI's obligation (debt) to Peerless, which ECI paid on April 24 in the

form of petroleum, was incurred no more than 45 days before the payment.

Peerless argues that its book transfer to ECI on April 21, 1981 of petroleum products worth $1,641,255 created a $1,601,197 obligation which ECI extinguished three days later when it physically transferred $1,642,960 worth of petroleum products to Peerless. Peerless, therefore, computes the period between when ECI's debt was incurred and when ECI payed off that debt as consisting of three days—well within the 45–day rule.

ECI's Trustee, on the other hand, argues that the April 21 book transfer from Peerless to ECI did not give rise to a "real" debt because no petroleum products were actually sent. Similarly, the Trustee argue that the book transfer from ECI to Horizon on the same day and for the same amount also was illusory because no products actually changed hands. From this point, the Trustee reasons that when the transactions of April 21 are viewed as a whole, ECI simply transferred Horizon's right to receive products to Peerless. Thus, when ECI delivered $1,642,9960 worth of products to Peerless, the Trustee argues, it was actually paying off its pre-existing debt to Horizon. Since ECI's debt to Horizon dated from February 27, the Trustee concludes that ECI's payment on April 24 fails to satisfy the 45–day rule. The success of the Trustee's argument, therefore, hinges on the theory that the book transfers were illusory and thus insufficient to create true "debts" within the meaning of § 547(c)(2).

The Trustee's argument, however, must fail. Although "the Trustee submits that this case is not the same old road agent dressed in new boots," the court is afraid that it is.

This court since 1986 has consistently held in these cases that a debt is incurred upon the transfer of legal title to the property in question and that the analysis is the same regardless of whether a physical or book transfer is used. *E.g., Energy Cooperative Inc. v. Fina Oil and Chemical,* 103 B.R. 171 (N.D.Ill.1986); *accord Energy Cooperative Inc. v. Koch Refining Co.,* 100 B.R. 992 (N.D.Ill.1989). This principle as applied to this case leads to the conclusion that ECI incurred a valid debt when it received Peerless's book transfer worth $1,641,255 on April 21. The mere fact that ECI also was involved in a book transfer with Horizon on the same day is contractually irrelevant to the relationship between ECI and Peerless. Moreover, the Trustee has not presented one shred of evidence that would indicate that Peerless had been assigned Horizon's right to receive a pre-existing debt.

Indeed, in yet another recent case in this series, this court rejected virtually the same argument that the Trustee has made here and granted the defendant's motion for summary judgment. In *Energy Cooperative Inc. v. Bell Fuels Inc.,* 100 B.R. 995 (N.D.Ill.1989), the defendant Bell contended that ECI's debt was incurred on the date of a four-party book transfer, which fell within the 45–day rule. As here, the Trustee rejected the date of the book transfer, arguing that the debt had actually been incurred two months earlier, when one of the parties other than Bell had physically transferred petroleum products to ECI. The *Bell Fuels* court, however, rejected the Trustee's argument because: (1) actual title had passed in the book transfer; (2) Bell was not involved in the earlier transfer between ECI and the other party; (3) nothing indicated that the book transfer was outside the ordinary course of business; and (4) Bell had no legal interest in the debt before the date of the book transfer. *Id.* 100 B.R. at 994.

The *Bell Fuels* rationale applies to this case. First, there was a valid book transfer between Peerless and ECI on April 21, 1981. Second, Peerless was not at all involved in the contractual relationship that existed between ECI and Horizon. Third, the April 21 book transfer from Peerless to ECI was well within the normal business patterns of the ECI/Peerless agreement. And fourth, Peerless's only legal rights in the debt in question arose because of the book transfer between Peerless and ECI on April 21.

The only distinction of law that the Trustee makes is to argue that the Seventh

Circuit's recent decision in *Levit v. Ingersoll Rand Financial Corp.*, 874 F.2d 1186 (7th Cir.1989), has changed the analysis to the extent that the opposite conclusion must result in this case. The facts in *Levit* are not particularly relevant to this case. Rather, the Trustee seeks to use the general rule of law issuing from *Levit*, which states that a transfer under the Bankruptcy Code must be viewed from the debtor's, and not the recipient's, perspective. The Trustee argues that when the April 21 book transfers are viewed solely from ECI's perspective, they constitute an assignment of a right to receive products from ECI.

The evidence, however, does not support this view in the least, even when viewed solely from ECI's perspective. ECI was dealing with Peerless and Horizon independently of each other. There is no evidence linking the Peerless/ECI transfer to the Horizon/ECI transfer. The fact that ECI may have relied on the balancing of its contractual rights with its contractual obligations in order to make business decisions does nothing to make the April 21 book transfers an assignment of a right to receive products. The right to receive products dating from February 27, 1981, belonged solely to Horizon and only Horizon could have assigned this right to Peerless. The Trustee has presented nothing to indicate that it did so. Thus, *Levit* does nothing to strengthen the Trustee's position.

With respect to raising issues of material fact, the Trustee argues that Steven Robinson, a Peerless officer, "conceded" in his deposition that book transfers were not actual transfers. By this, the Trustee apparently attempts to show that the parties did not themselves use book transfers to change legal title in their exchange agreement and, thus, this court should not do so either.

As Peerless points out, however, this alleged concession did not occur. What Robinson did concede in his deposition was that a book transfer was not the same as a physical transfer. This much, however, is obvious; a book transfer is executory in nature, while a physical transfer is not.

But Robinson never stated that the parties did not consider legal title to pass with the execution of a book transfer; indeed he repeatedly stated otherwise. Thus, the Trustee also fails to raise a material issue of fact.

In sum, the Trustee's attempt to avoid the legal characterization of the book transfer as the legitimate source of debt is again rejected. As the Trustee does not contest the key material facts as presented by the defendant with respect to the April 21 book transfer from Peerless to ECI, neither are there material issues of fact to be resolved. Consequently, summary judgment for the defendant is appropriate.

For all of the foregoing reasons, Peerless's motion for summary judgment is granted.