In re MALONEY–CRAWFORD, INC., an Oklahoma corporation, Debtor,

MALONEY–CRAWFORD, INC., Plaintiff,

v.

HUNTCO STEEL, INC., Defendant.

Bankruptcy No. 92–00157–C.
Adv. No. 92–0160–C.

United States Bankruptcy Court,
N.D. Oklahoma.

Sept. 10, 1992.

Neal Tomlins & Harold A. Lewis, Tulsa, Okl., for plaintiff.

R. Brent Blackstock, Tulsa, Okl., for defendant.

## MEMORANDUM OPINION

STEPHEN J. COVEY, Chief Judge.

This matter comes on to be heard upon the Cross Motions for Summary Judgment filed by the Plaintiff and Defendant. The Court finds as follows after having considered the pleadings; the parties' Stipulation of Fact; the deposition of Richard E. Dowell; the Debtor's financial statements; the parties' Settlement Agreement; copies of cancelled checks; the Debtor's Schedules of Assets and Liabilities; the Debtor's Confirmed Plan of Reorganization and Disclosure Statement; and the arguments of counsel.

### Procedural Background

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on January 17, 1992. On May 18, 1992, the Debtor filed an adversary proceeding against the Defendant to recover two alleged preferential payments each in the amount of $22,-367.10.[1] The parties thereafter filed their respective motions for summary judgment.

### Background Information

For approximately five years prior to bankruptcy, Huntco Steel, Inc. ("Huntco"), the Defendant herein, sold steel products to the Debtor on credit. The ordinary terms of repayment varied between thirty and ninety days. At various times during the business relationship, the Debtor fell behind and then made current its payments. In October 1990, some fifteen months prior to bankruptcy, Huntco sued the Debtor in federal court on an open unsecured account in the amount of $176,-614.63 for steel sold to the Debtor. The Debtor denied owing this amount and filed a counterclaim against Huntco for deficiencies in the quality of the steel.

This litigation was settled on July 3, 1991, when the parties entered into a Settlement Agreement. Pursuant to this agreement, the lawsuit was dismissed and Debtor agreed to pay Huntco $130,000.00 in six monthly installments of $22,367.10, commencing July 15, 1991 and ending December 15, 1991.

During this period of time, and for several years prior thereto, the Debtor had been short on working capital and constantly had difficulty paying suppliers. The principal suppliers, in addition to Huntco, were

---

1. Pursuant to § 1107 of the Bankruptcy Code, a Debtor under Chapter 11 has the same power to bring a preference action as a Trustee under Chapter 7.

Bethlehem Steel, Cargill Steel and O'Neal Steel. The Debtor often entered into workout agreements calling for monthly and weekly payments on past-due accounts with the suppliers. Huntco, however, was the only one which actually filed suit.

The Debtor made five of the six payments called for in the Settlement Agreement with Huntco. Each one of these payments, however, was late and was made only after prompting by Huntco's attorney. The fourth payment was made on November 13, 1991, after a prior check had failed to clear the Debtor's bank because of insufficient funds. The actual dates of the five payments are as follows:

| Check Number | Due Date of Payment | Date of Payment |
|---|---|---|
| 1 | July 15, 1991 | July 19, 1991 |
| 2 | August 15, 1991 | August 21, 1991 |
| 3 | September 15, 1991 | September 18, 1991 |
| 4 | October 15, 1991 | November 13, 1991 (This check was given to replace insufficient funds check) |
| 5 | November 15, 1991 | November 19, 1991 |

The Debtor contends the last two payments were preferential under the Bankruptcy Code and should be returned.

## The Issues

Section 547(b) of the Bankruptcy Code provides as follows:

(b) ..., the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or ...

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

Huntco concedes the elements of a preference under § 547(b) have been met with the exception of (3) transfer made while Debtor was insolvent and (5)(A) that it received more than it would have received under a Chapter 7 liquidation.

Huntco also raised two affirmative defenses under § 547(c). Said section provides in part as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business of financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

These two affirmative defenses are known as the "new value" and "ordinary course of business" defenses. The issues for the Court to decide are (1) was the Debtor insolvent at the time of the payments and (2) did Huntco receive more than it would have received under a Chapter 7 liquidation. If the Court finds in the Debtor's favor on these two issues, then it will determine whether Huntco has brought forth credible evidence tending to establish either of the affirmative defenses.[2]

---

**2.** Summary judgment is appropriate, if, from the attached affidavits and depositions, there is no dispute as to the material facts and the moving party is entitled to a judgment based upon applicable law. The nonmovant is required to come forward with evidence creating a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

534

Insolvency

Section 547(f) of the Bankruptcy Code states as follows.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

■ Section 101(32) of the Bankruptcy Code defines insolvency as being when the debtor's debts are greater than the fair value of its property. Federal Rule of Evidence, 301 governs presumptions in civil actions and imposes upon the defendant the burden of presenting evidence to rebut or meet the presumption of insolvency. If substantial evidence is forthcoming, then the burden of proof on this issue is on the Debtor.

■ To rebut the presumption, the Defendant introduced two financial statements of the Debtor: One dated May 31, 1990 some seventeen months prior to the transfers in question and the other dated November 30, 1991. Additionally, the Defendant brought forth the deposition testimony of Richard E. Dowell ("Dowell") who was Treasurer, Secretary and Vice President of the Debtor.

The May 31, 1990 statement shows assets of $9,680,255.17, liabilities of $6,742,-979.61 and a total net worth of $2,937,-225.56. The November 30, 1991 statement shows assets of $8,879,391.16, liabilities of $6,299,486.84 and a total net worth of $2,579,904.32.

Dowell testified at length in his deposition in regard to the financial statements and the solvency or insolvency of the Debtor. In summary, he stated as follows: he did not prepare the statements; the Debtor's controller prepared them for prospective purchasers; he had no opinion as to, and no way of knowing, the actual value of the Debtor's assets; however, the assets were overstated by at least $2,000,000.00 because an account receivable from the Exxon Company was included; this "asset" was merely a "hope" and turned out to

have no value at all; the liabilities were understated by $600,000.00; Dowell saw a balance sheet for the Debtor dated December 3, 1991 which showed the Debtor had a negative net worth of $2,000,000.00; between August 1991 and December 1991, the asset value of the company dropped by $3,000,000.00.

The Court also takes judicial notice of the Debtor's schedules, filed on February 3, 1992, which show assets of $3,202,428.46 and liabilities of $7,251,425.37 and a negative net worth of $4,048,996.91.

The sufficiency of the evidence which a defendant must introduce to overcome the presumption of insolvency has been discussed in numerous cases. In *Tidwell v. Merchants & Farmer's Bank of Milledgeville, (Matter of Dempster)*, 59 B.R. 453 (Bankr.M.D.Ga.1984) the court stated:

In a preference action, the party opposed to the summary judgment motion must produce more than speculative evidence of solvency in order for the party to rebut the statutory presumption of insolvency ...

When a party seeks to overcome the statutory presumption of insolvency, he must introduce some evidence tending to show that the debtor was solvent at the time of the alleged preferential transfer. 11 U.S.C.A. § 547(b) (West 1979). In this adversary proceeding, Defendant's showing of a financial statement that predates bankruptcy by eighteen months, bank accounts with positive balances, and that Debtor was conducting business, simply does not address the question of whether Debtor's assets exceeded his liabilities. Since there is no genuine issue of fact as to Debtor's insolvency, Plaintiff is entitled to summary judgment on the issue of insolvency.

*See also Sandoz v. Fred Wilson Drilling Co., (Matter of Emerald Oil Co.)*, 695 F.2d 833 (5th Cir.1983) which states:

Under the Bankruptcy Code definitions, an individual or corporate debtor is "insolvent" when "the sum of such entity's debt is greater than all of such enti-

(1986); *Matsushita Electronic Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106

S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See Fed. R.Civ.P.* 56.

ty's property, at a fair valuation." Section 101(26) of the Code, 11 U.S.C. § 101(26). We agree with the bankruptcy court that the present evidence offered by the creditor, which at most indicated a *potential* error in accounting methods relied upon by the trustee, did not constitute any evidence sufficient to cast into doubt the statutory presumption of insolvency, i.e., that the debtor's assets exceeded its liabilities ...

` To hold that any sort of speculative showing by the party opposed to the presumption would cause it to disappear, no matter how tenuous the claim of possible solvency, would in our view resurrect the mischief (see note 5 *supra*) that was intended to be cured by the 1978 Code's creation through section 547(f) of the statutory presumption of insolvency.

*See also Pioneer Technology, Inc. v. Eastwood, (In re Pioneer Technology, Inc.),* 107 B.R. 698 (9th Cir. BAP 1988); *In re Miniscribe Corp.,* 123 B.R. 86 (Bankr. D.Colo.1991); and *In re Koubourlis,* 869 F.2d 1319 (9th Cir.1989).

In the present case, Huntco introduced the May 1990 and November 1991 financial statements and the deposition testimony of Dowell. The Court finds this evidence insufficient to overcome the presumption of insolvency, particularly in light of the overwhelming insolvency shown on the Debtor's schedules. The financial statements were prepared in-house for prospective purchasers. No testimony was offered as to how the asset values or liability amounts were determined. Additionally, the testimony of Dowell completely destroys any probative value which might be attached to the statements.

Did the Payments Enable Huntco to Receive More than it Would Have Received in an Liquidation Under Chapter 7?

The uncontested evidence shows the Debtor owed Huntco three settlement payments totalling $67,101.30 at the beginning of the ninety-day period before bankruptcy. During the ninety-day period, the Defendant received two-thirds of this amount, $44,734.20. The Debtor's Disclosure Statement, which after notice to all creditors was approved by the Court, contained a hypothetical liquidation analysis indicating that if the Debtor's assets were liquidated, unsecured creditors would receive nothing on their claims. The Disclosure Statement also represents the unsecured creditors would receive more under the Debtor's Plan of Reorganization than they would from a Chapter 7 liquidation. The Court confirmed the Third Amended Plan of Reorganization on September 2, 1992, which provided that unsecured creditors would receive no more than a ten percent (10%) dividend on their claims.

Huntco offered no evidence to show it would have fared better under a Chapter 7 liquidation. Therefore, this Court finds Huntco did receive more on its claims during the ninety-day period than it would have received under a Chapter 7 liquidation. *See In re Miniscribe Corp.,* 123 B.R. 86 (Bankr.D.Colo.1991) where the court stated:

In deciding whether a preference exists under Section 547(b)(5) "the court must examine a hypothetical situation where a chapter 7 proceeding is initiated, and the debt has not been paid." *In re Presidents Mortgage Industrial Bank,* 110 B.R. 508, 512 (D.Colo.1989). In such a situation, Keymarc would have been an unsecured creditor and would have received far less than the $95,703.20 it received as a result of the payments made. It also appears that because of Miniscribe's $218 million in excess liabilities, that other creditors within the same class of general unsecured creditors as Keymarc would not have received anywhere near the same percentage payment on their debts as that received by the defendant. It is likely that if a Chapter 7 had occurred, unsecured creditors would not have received any distribution from the estate. Keymarc received much more than other similarly situated creditors and therefore payments made to them by the debtor did not in fact diminish the estate. *See In re Brent Explorations,*

*supra.*

*See also Pioneer Technology, Inc. v. Eastwood, (In re Pioneer Technology, Inc.), 107 B.R. 698 (9th Cir. BAP 1988).*

Ordinary Course of Business Defense

■ Since the Court finds the Debtor has established the elements of a recoverable preference under § 547(b), it must now consider whether Huntco has established or raised a factual issue in regard to its two affirmative defenses. The principal affirmative defense is the ordinary course of business defense. The parties agree the debts repaid during the ninety-day period were incurred in the ordinary course of business of both the Debtor and Huntco. The dispute arises over whether the payments were made in the ordinary course of business and according to ordinary business terms of both the Debtor and Huntco.

Many cases have discussed the meaning of "ordinary course of business." The general rule is stated in *In re Pioneer Technology, Inc. v. Eastwood, (In re Pioneer Technology, Inc.),* 107 B.R. 698 (9th Cir. BAP 1988) as follows:

According to Collier, "[t]his section is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee" *Collier on Bankruptcy,* ¶ 547.10 at 545–45. The legislative history of § 547(c)(2) provides that the purpose of the section

is to leave undisturbed normal financial relations, because [the exception] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditor during the debtor's slide into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 373–74 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6329. Courts have consistently held that the section was intended to protect *ordinary trade credit* transactions, and not those outside the normal course of either the debtor's or creditor's business. *See, e.g., In re Daikin Miami Overseas, Inc.,* 65 B.R. 396, 398

(S.D.Fla.1986); *In re Bourgeois,* 58 B.R. 657, 660 (Bankr.W.D.La.1986); *In re Western World Funding, Inc.,* 54 B.R. 470, 480 (Bankr.D.Nev.1985); *In re Fulghum Const. Corp.* 45 B.R. 112, 116 (Bankr.M.D.Tenn.1984). Moreover, a payment which arises out of "unusual" debt collection or payment practices does not fall within the scope of § 547(c)(2). *In re Craig Oil Co.,* 785 F.2d 1563, 1566 (11th Cir.1986). *See also In re Economy Milling Co., Inc.,* 37 B.R. 914, 922 (D.S.C.1983).

In *In re Daikin Miami Overseas, Inc.,* 65 B.R. 396 (S.D.Fla.1986) the court said:

As the bankruptcy judge reasoned, payments made pursuant to a settlement agreement, which appear to be the result of an antecedent debt and prior dispute between the parties, are simply not in the ordinary course of business ...

In *In re Richardson,* 94 B.R. 56 (Bankr. E.D.Pa.1988) the court said, citing many decisions:

Prior decisions have held, and I agree, that payments made pursuant to a judgment or settlement agreement are not made in the ordinary course of business. . . .

*See also In re Magic Circle Energy Corp.,* 64 B.R. 269 (Bankr.W.D.Okla.1986); *Matter of Red Way Cartage Co, Inc.,* 84 B.R. 459 (Bankr.E.D.Mich.1988); *In re Miniscribe Corp.,* 123 B.R. 86 (Bankr.D.Colo. 1991); *In re Holdway,* 83 B.R. 507 (Bankr. E.D.Tenn.1988; *In re American Insulator Co.,* 60 B.R. 752 (Bankr.E.D.Pa.1986); and *In re Brenton's Cove Development Co.,* 52 B.R. 287 (D.R.I.1985).

Applying these rules to the present case, this Court finds the Debtor's payments within the ninety-day period were not made in the ordinary course of business of the Debtor and Huntco. Huntco had sued the Debtor in federal court for an amount in excess of $176,000.00 and the Debtor had counterclaimed alleging defective materials had been sold. Filing of the suit and counterclaim not only was unusual and out of the ordinary course of business as between the Debtor and Huntco, but also as between the Debtor and all of its other suppli-

ers. Huntco was the only creditor to file suit.

When the suit was settled, the Debtor was required to pay a reduced amount in six equal installments. Each of these installments was paid late. A letter from Huntco's attorney prompted each payment. The payment made on November 13 should have been made on October 15 and was made only after the Debtor had given a bad check for the October 15 payment. For the above reasons, the two payments made within the preferential period were not made within the ordinary course of business of the parties.

### New Value Exception

■ Defendant's final affirmative defense is stated in § 547(c)(1) and is known as the new value/contemporaneous exchange defense. This section allows a defendant to defeat a trustee's (or debtor-in-possession's) preference claim if at the time of receiving the preference the creditor transferred to the Debtor equivalent new value. New value is defined in § 547(a)(2) of the Bankruptcy Code as follows:

(a) In this section— ...

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

Huntco contends that when it entered into the Settlement Agreement dismissing its lawsuit, reducing its claim from $176,-000.00 to $130,000.00, and agreeing to installment payments over six months, it bestowed a benefit upon or gave new value to the Debtor and therefore payments made in accordance with the Settlement Agreement are not preferential. The Court rejects this argument.

The two payments subject to attack occurred on November 13 and November 19, 1991, and within ninety days of bankruptcy. At the time the Debtor transferred these funds, Huntco did not contemporaneously transfer any money or money's worth in goods, services or new credit to the Debtor. Absolutely nothing was transferred to the Debtor at the time Huntco received the two contested payments.

Section 547(a)(2) supra., expressly provides that new value does not include an obligation substituted for an existing obligation. That is what happened here. The Settlement Agreement created a new obligation of $130,000.00 in place of the old debt. *See Drabkin v. A.I. Credit Corp.,* 800 F.2d 1153 (D.C.Cir.1986) where the court said:

We think it plain that a payment to an *unsecured* creditor in return for that creditor's agreement not to force the debtor into bankruptcy can never be treated as a new value. Otherwise the preference provision of the bankruptcy code would be nullified, because all creditors could extract payments within the preference period under that exception. Similarly, an agreement by an *undersecured* creditor to forgo his right to foreclose on collateral could not be treated as new value without unfairly prejudicing general creditors ... Therefore forbearance alone—at least of this kind—cannot constitute new value without undermining basic premises of the Code. (Footnote omitted).

*See also In re Robinson Bros. Drilling, Inc.,* 877 F.2d 32 (10th Cir.1989) where the Tenth Circuit discussed at length the meaning of the new value/contemporaneous exchange defense to a preference action. The court stated that new value, money, property or services must be given at the time of the transfer and it must be equivalent to the amount of value received by the creditor. The decision clearly states that reduction of the creditor's claim against the debtor is not new value.

### Conclusion

Both parties brought before the Court all their evidence in regard to the Debtor's preference claim. The Court, from the undisputed facts, finds the Debtor was insolvent when the two contested payments were made. These payments were not

made in the ordinary course of business and no contemporaneous new value was transferred from Huntco to Debtor at the time of the payments. The Debtor has established all the elements of a recoverable preference and Huntco has not established any affirmative defenses. The Court, therefore, will enter a separate order entering judgment in favor of the Debtor in the amount of $44,734.20, plus costs.