POSNER, Circuit Judge.
 

 Section 547(b) of the Bankruptcy Code, 11 U.S.C. § 547(b), makes voidable at the option of the trustee in bankruptcy any transfer that the debtor made, while insolvent, in payment of a debt owed before the transfer, provided the transfer occurred no more than 90 days before the debtor filed for bankruptcy. This “voidable preference” provision does not apply, however, if the transfer was
 

 (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
 

 (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
 

 (C) made according to ordinary business terms.
 

 11 U.S.C. § 547(c)(2). We must decide whether the bankruptcy judge erred in holding that a commercial tenant’s late payments of rent and taxes were not made in the ordinary course within the meaning of (B); the parties have stipulated that the requirements of (A) and (C) were satisfied.
 

 The issue was submitted to the bankruptcy judge on an agreed statement of facts. Xonics leased commercial space from Sunnyvale. The lease entitled Xonics to occupy the premises on July 1, 1983, but not to begin paying rent until November 1, except that it was required to prepay one month’s rent ($44,208.33) on April 1, 1983, to be credited against the rent for November.. The lease also required Xonics to pay taxes on written demand by Sunnyvale and gave Xonics a five-day grace period for payment of rent, at the expiration of which Xonics would be in default, would have to pay interest at a stipulated rate, and would be subject to the usual remedies available to landlords, including eviction.
 

 The prepaid rent was paid on April 4, within the grace period, but because the premises were not completed and therefore not occupied until July 7 the parties agreed to give Xonics credit not only for its November rent but for the first six days of its December rent, and to make the rest of the December rent due on December 15 rather than December 1. Xonics did not pay the December rent until January 1,1984, or the January rent (due January 1) until January 16. In addition, on December 8 Sunnyvale wrote Xonics demanding that it pay Sunnyvale $15,004.24 in property taxes and stating that it “was disappointed to hear that Xonics is going into default under our lease agreement ... by its failure to pay the
 
 *765
 
 subject property taxes in a timely fashion.” The letter also informed Xonics that unless the taxes and the December rent were paid by December 19, Sunnyvale would begin eviction proceedings. Xonics paid Sunnyvale these taxes on January 6.
 

 In February, Xonics filed for bankruptcy; on March 29 it paid the rent that had been due on March 1; and in April it gave up the premises. The agreed statement of facts— the entire factual record in the case — does not reveal whether or when Xonics paid the February rent or when exactly the property taxes demanded on December 8 were due. Sunnyvale concedes, however, that all three payments made in January, two of rent and one of taxes, were late under the terms of the lease. (The payment of rent made in April 1983 was not within the 90-day period for avoiding a transfer, while the payment in March 1984 was made after Xonics filed for bankruptcy and is therefore also beyond the reach of section 547.)
 

 In finding that the three January payments had not been made in the ordinary course of business between Xonics and Sunnyvale, the bankruptcy judge apparently adopted a per se rule that late payment of rent is never in the ordinary course. The district court rejected such a rule, yet sustained the bankruptcy judge’s ruling because “the burden of proving that the payments were ordinary rested with [Sunnyvale], and [Sunnyvale] did not sustain its burden. Although the Bankruptcy Judge should perhaps have given more weight to the parties’ prior course of dealing, he was entitled to weigh the evidence as he saw fit. His factual determinations must be affirmed unless clearly erroneous, and they were not clearly erroneous here.” (Citations omitted.)
 

 Neither opinion is satisfactory. Nothing in the statute or its history indicates that late payments can never be in the ordinary course; and a trier of fact is not “entitled to weigh the evidence as he s[ees] fit” when this means excluding a class of evidence because he has misconceived the substantive rule. Sunnyvale did, however, have the burden of proving that the late payments were made in the ordinary course of its and Xonics’ business relationship, 11 U.S.C. § 547(g), and the stipulated facts — which, we stress, are the entire record — demonstrate that the burden was not carried.
 

 The main purpose of the voidable-preference provision in the Bankruptcy Code is usually said to be to assure fair or equal treatment of creditors. See, e.g.,
 
 Kapela v. Newman,
 
 649 F.2d 887, 890 (1st Cir.1981);
 
 In re Ewald Bros., Inc.,
 
 45 B.R. 52, 59 (Bankr.D.Minn.1984); H.Rep. No. 595, 95th Cong., 1st Sess. 177-78 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6137-6139; see generally McCoid,
 
 Bankruptcy, Preferences, and Efficiency: An Expression of Doubt,
 
 67 Va.L.Rev. 249 (1981). But as so often, the invocation of fairness and equality — vague terms that they are — conceals a practical consideration. If there were no rule against preferences, an insolvent debtor, teetering on the edge of bankruptcy and besieged by creditors, might have an incentive to buy off the most importunate of his creditors, necessarily at the expense (the debtor being insolvent) of other creditors, in the hope of keeping afloat a little longer. Knowing that the debtor might do such a thing, an unsecured creditor who sensed that a debt- or might be about to go belly-up would have a strong incentive to petition him into bankruptcy so that the debtor could not deplete the assets available to pay this creditor by paying another unsecured creditor instead. See, e.g., H.Rep. No. 595,
 
 supra,
 
 at 177, 373, U.S.Code Cong. & Admin. News 1978, pp. 6137, 6329. Thus the voidable-preference provision actually helps debtors as a group (as well as creditors as a group) by making creditors more forbearing. This is a general feature of provisions that protect creditors. The welfare of debtors and of creditors is intertwined; the fewer the protections for creditors, the higher interest rates are, and interest is paid by debtors; conversely, the greater the protections for creditors, the lower interest rates are, and debtors as a group benefit.
 
 In re Patterson,
 
 825 F.2d 1140, 1142 (7th Cir.1987).
 

 
 *766
 
 The provision on voidable preferences does not, as one might fear, dry up the insolvent debtor's sources of credit, because the provision is inapplicable to payment of new as distinct from antecedent debt. Unfortunately, the line between the two forms of debt is not a sharp one, and this is where section 547(c)(2) — a statutory codification of a judge-made exception to previous versions of section 547(b) — comes into play. Most business transactions are not simultaneous; often performance precedes payment. This creates a problem for the insolvent debtor who wants to continue in business. If he does not pay cash for all the goods and services that he buys, his payments when made may be deemed payments of antecedent rather than current debt; knowing this, suppliers will be reluctant to deal on other than a cash basis with a debtor suspected of being insolvent; and having to pay for everything in cash will make it more difficult for the debtor to stay in business, thus increasing the probability of bankruptcy.
 

 As originally enacted in 1978, section 547(c)(2) contained not only the three requirements quoted at the outset of this opinion but the further requirement that the debtor have paid within 45 days of the transaction. This requirement was deleted in 1984 as unduly restrictive. The whole story is told well in DeSimone,
 
 Section 547(c)(2) of the Bankruptcy Code: The Ordinary Course of Business Exception Without the 45-Day Rule,
 
 20 Akron Law Rev. 95 (1986), and more briefly in
 
 In re Bourgeois,
 
 58 B.R. 657 (Bankr.W.D.La.1986). Against this background it is reasonably clear that section 547(c)(2) envisages situations where the debt is no more “antecedent” than is normal in noncash business transactions. So if on December 19 Xonics had paid rent due on December 15 — that is, if it had paid within the five-day grace period — Sunnyvale would be protected by section 547(c)(2) from any argument that, the debt having arisen on December 15, the payment four days later was the payment of an antecedent debt, hence voidable under section 547(b).
 

 Similarly, if the terms of the lease had been modified before the preference period began to run, and “late” payment were timely under the modified terms, section 547(c)(2) would provide a safe harbor for Sunnyvale. This conclusion is implicit in our hypothetical example of payment within the grace period of rent due on December 15; for remember that the original lease to Xonics called for payment on December 1, but was modified to push the date forward to the fifteenth.
 

 All this assumes, it is true, that both the original and the modified terms were “ordinary business terms,” a separate provision of section 547(e)(2) and one that may require evidence of conformity to the customs of the trade or business in question. There is a division of authority on that question (discussed in
 
 In re Steel Improvement Co.,
 
 79 B.R. 681 (Bankr.E.D.Mich.1987)), but here the parties stipulated that the late payments were in accordance with ordinary business terms.
 

 No modification purported to allow Xon-ics to pay rent later than the grace period, or taxes almost a month after they were demanded (though when exactly they were due is, as we mentioned, unclear). These were defaults under the lease as modified; any doubt on this score concerning the taxes is dispelled by Sunnyvale’s letter of December 8. The question for decision, therefore, is whether payments that are late in the sense of violating even the modified terms of a contract can ever be in the ordinary course of business. We hesitate to say “never.” Sweeping legal generalizations made with imperfect knowledge of the factual situations that the generalizations might cover are fraught with danger. And we know that creditors frequently treat debtors leniently without intending by doing so to relax the debtors’ contractual obligations (see, e.g.,
 
 Monarch Coaches, Inc. v. ITT Industrial Credit,
 
 818 F.2d 11, 13 (7th Cir.1987)) — that is, without modifying the contract — and we do not see why in such a case the parties’ “ordinary course of business” should be defined by their contract rather than by their practice. Suppose a lease required the tenant to pay on the fifteenth of each month, without any
 
 *767
 
 grace period, but because the nature of the tenant’s business or occupation inevitably made him short of cash in the middle of the month the landlord had over a substantial period of time accepted payment on the twentieth without charging interest or threatening to evict. Then one might well conclude that payment by the twentieth, though technically in violation of the lease, was within the ordinary course of business of the parties and should be within the protection of section 547(c)(2). It would hardly be a case within the policy of section 547(b), since it would not be a case where the tottering debtor had decided to put one creditor ahead of the others; he would simply be doing the same thing he had been doing before he began to totter. And one would not want to force the case into the modification mold and hold that the lease had been modified by the parties’ practice; a party should not be discouraged from exercising forbearance by the knowledge that if he does so he may be held to have surrendered a contractual right.
 

 This case, however, is not one where the parties to a contract adopt an extra-contractual practice that becomes the ordinary course of business between them. The only payment Xonics made to Sunnyvale before the 90-day preference period was made within the grace period provided for in the lease. Obviously a single,
 
 timely
 
 payment could not establish a pattern, history, or course of dealings in which
 
 late
 
 payment was consistent with the parties’ practice though contrary to their contract. Sunnyvale’s counsel suggested at argument that late payments made within the preference period could establish the ordinary course of business between the parties if as in this case insolvency occurred early in the parties’ relationship. We hesitate to agree, especially when the only evidence that late payments were within the ordinary course of business is that the debtor made such payments after he became insolvent. But see
 
 In re Mindy’s, Inc.,
 
 17 B.R. 177 (Bankr.S.D.Ohio 1982). We hold that the conduct of a debtor, after becoming insolvent, in failing to make payments within the time required by his contract with the creditor is presumptively non-ordinary. See
 
 In re Craig Oil Co.,
 
 785 F.2d 1563, 1567 (11th Cir.1986).
 

 We need not decide whether the presumption might ever be overcome; it is not overcome by the barebones stipulation that, as we have been at pains to stress, is the entire factual record in this case. All the stipulation shows is that, as is hardly surprising, Xonics fell behind in its rent payments when it became insolvent; and its landlord, having no choice, accepted late payment. This is not a case of parties’ adopting a practice at variance with their contract; it is the archetypal voidable-preference case where an insolvent debtor pays one creditor ahead of another. So clear is this on the stipulated facts that there is no point in remanding the case to the bankruptcy judge for reconsideration of the facts under the legal standard laid- down in this opinion. On this record only one conclusion is possible — that Sunnyvale failed to carry its burden of proving that the late payments to it were within the ordinary course of its business with Xonics.
 

 Affirmed.