In re MIDWAY AIRLINES, INC., Debtor.

Sheldon L. SOLOW, Trustee, Plaintiff,

v.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, Defendant.

Bankruptcy No. 91 B 06449.
Adv. No. 93 A 01570.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

March 27, 1995.

Gary S. Caplan, John W. Monihan, Sachnoff & Weaver, Ltd., Chicago, IL, for Sheldon L. Solow, Trustee for Midway Airlines, Inc., plaintiff.

Michael T. Hannafan, Cory A. Johnson, Michael T. Hannafan & Associates, Ltd., Chicago, IL, for Ogletree, Deakins, Nash, Smoak & Stewart, defendants.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Sheldon L. Solow (the "Trustee") for Midway Airlines, Inc. (the "Debtor") pursuant to Federal Rule of Civil Procedure 59(e), incorporated by reference in Federal Rule of Bankruptcy Procedure 9023, to alter or amend a judgment entered on January 23, 1995. For the reasons set forth herein, the Court hereby denies the motion.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. It constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), and (O).

## II. FACTS AND BACKGROUND

On November 24, 1993, the Trustee commenced this adversary proceeding against Ogletree, Deakins, Nash, Smoak & Stewart ("Ogletree"), former attorneys for the Debtor, to avoid alleged preferences pursuant to 11 U.S.C. § 547. In 1989, Ogletree first worked for the Debtor rendering general counseling, for which it was paid prior to the preference period. Thereafter, in 1990, Ogletree was again engaged, but the legal services involved defending a union organizing campaign, far more extensive than the prior work Ogletree had undertaken for the Debtor. The Debtor paid Ogletree for the

work during the statutory preference period. These payments, totalling $61,864.15, are the subject of this matter.

Prior to the trial, Ogletree stipulated to all elements under section 547(b), thus conceding that the subject transfers were voidable preferences. Ogletree asserted the statutory defense that the payments were excepted from recovery because they were made in the ordinary course of business pursuant to section 547(c)(2).[1] Both parties stipulated that the debt underlying the alleged preferential payments was incurred in the ordinary course of business between Ogletree and the Debtor under section 547(c)(2)(A). Thus, the only remaining issues at trial were whether the alleged preferential payments were made in the ordinary course of business between Ogletree and the Debtor under section 547(c)(2)(B), and whether the alleged preferences were made according to ordinary business terms under section 547(c)(2)(C). (Trial transcript of proceedings on January 17, 1995, p. 7, hereinafter cited "Tr.").

At the trial, the principal testimonial evidence presented was by Homer Deakins, managing partner of Ogletree, to supplement the Debtor's and Ogletree's relevant financial records to document the facts attendant to the relationship between the parties, the Debtor's payments to its other lawyers, and Ogletree's summary of aged accounts receivables from other clients. The Trustee presented no rebuttal evidence except an excerpt from a deposition transcript (Tr. 58–59) which the Court considered in its ruling. (Tr. 81–82). The Court found that Ogletree demonstrated that the subject payments made to it by the Debtor during the preference period were made in the ordinary course of business between the parties under section 547(c)(2)(B), and on the evidence adduced was in accordance with the ordinary business terms of the domestic air carrier-

---

1. Section 547(c)(2) provides:
   (c) The trustee may not avoid under this section a transfer—
     (2) to the extent such transfer was—
     (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

  (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
  (C) made according to ordinary business terms.
11 U.S.C. § 547(c)(2).

legal service industry under section 547(c)(2)(C). Thereafter, on January 23, 1995, the Court entered judgment in favor of Ogletree.

### III. APPLICABLE STANDARDS

■ The Seventh Circuit Court of Appeals has instructed courts to treat all substantive post-judgment motions, regardless of their captions, if made within ten days of judgment, under Federal Rule of Civil Procedure 59. *United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir.1992); *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Wisconsin*, 957 F.2d 515, 517 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 91, 121 L.Ed.2d 53 (1992); *Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). Motions made thereafter are considered under the provisions of Rule 60 of the Federal Rules of Civil Procedure, as adopted by Federal Rule of Bankruptcy Procedure 9024. Because the motion to alter or amend the judgment was served on February 2, 1995, within ten days of the entry of the judgment, the procedural standards and authorities construing Federal Rule 59, incorporated by Federal Rule of Bankruptcy Procedure 9023, control.

■ Motions made under Rule 59 serve to correct manifest errors of law or fact, or to consider the import of newly discovered evidence. *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557 (7th Cir.1985); *Keene Corp. v. International Fidelity Ins. Co.*, 561 F.Supp. 656 (N.D.Ill. 1982), *aff'd*, 736 F.2d 388 (7th Cir.1984); *F/H Industries, Inc. v. National Union Fire Ins. Co.*, 116 F.R.D. 224, 226 (N.D.Ill.1987). The function of a motion made pursuant to Rule 59(e) is not to serve as a vehicle to relitigate old matters or present the case under a new legal theory. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986); *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill.1976); *In re BNT Terminals, Inc.*, 125 B.R. 963, 976–77 (Bankr. N.D.Ill.1990). The purpose of a motion to alter or amend "is not to give the moving party another 'bite at the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment." *BNT Terminals* 125 B.R. at

977. "A motion brought under Rule 59(e) is not a procedural folly to be filed by a losing party who simply disagrees with the decision; otherwise, the Court would be inundated with motions from dissatisfied litigants." *Id.* The decision to grant or deny a Rule 59(e) motion is within the Court's discretion. *LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263 (7th Cir.1995).

The thrust of the Trustee's motion is three-fold: (1) the Court improperly determined that Ogletree proved that the alleged preferential payments were in the ordinary course of business between the parties under section 547(c)(2)(B) despite the "marked contrast" between the timing of the two pre-preference period payments and the preference period payments by the Debtor to Ogletree; (2) the Court improperly relied on similar evidence regarding how the Debtor dealt with other law firms and how Ogletree dealt with other domestic air carrier clients to determine that the alleged preferential payments made here were within the ordinary business terms of the industry under section 547(c)(2)(C); and (3) the Court incorrectly relied on Deakins' hearsay opinion testimony regarding the industry standard. Each of these arguments will be addressed in turn.

### IV. DISCUSSION

#### A. The Ordinary Course of Business Between the Debtor and Ogletree Pursuant to 11 U.S.C. § 547(c)(2)(B)

Pursuant to the first argument, the Trustee maintains that the Court erred for two reasons in finding that Ogletree met its burden of proof under section 547(c)(2)(B). First, there was a lack of pre-preference transactions between Ogletree and the Debtor that precluded Ogletree from proving what was ordinary between the parties. Alternatively, the preference period payments were made outside the "ordinary course of business" between Ogletree and the Debtor to the extent that such minimal pre-preference transactions demonstrated what was ordinary between the parties. Second, the Trustee argues that the Court improperly mixed the elements of section 547(c)(2)(B) and (c)(2)(C) by considering evidence of the

range of days in which the Debtor paid other law firms, including payments made during the preference period, and evidence of Ogletree's payments from other airline carriers in determining what was ordinary between Midway and Ogletree.

In *Tolona Pizza Prods. Corp.*, 3 F.3d 1029 (7th Cir.1993), the Seventh Circuit stated that a defendant must prove three elements to establish an ordinary course defense to a preferential payment during the preference period: (1) that the debt underlying such payment was incurred in the ordinary course of business between the debtor and the creditor—section 547(c)(2)(A) (this element is not in dispute here); (2) that such payment was made in the ordinary course of business of the debtor and the creditor—section 547(c)(2)(B); and (3) that such payment was made according to ordinary business terms—section 547(c)(2)(C). *Id.* at 1031–32. Subsections 547(c)(2)(B) and (c)(2)(C) are distinct elements of the ordinary course defense which must be analyzed separately. *Id.* at 1031–33. To merge the two elements would "cut out and throw away one-third of an important provision of the Bankruptcy Code...." *Id.* at 1032. Courts look to a variety of factors to determine if the payments at issue were "ordinary":

> Among the factors courts consider in determining whether transfers are ordinary in relation to past practices are: (1) the length of time the parties were engaged in the transactions at issue; (2) whether the amount or form of tender differed from past practices; (3) whether the debtor or creditor engaged in any unusual collection or payment activity; and (4) whether the creditor took advantage of the debtor's deteriorating financial condition.

*In re Grand Chevrolet, Inc.*, 25 F.3d 728, 732 (9th Cir.1994) (citing *In re Richardson*, 94 B.R. 56, 60 (Bankr.E.D.Pa.1988)).

The Trustee claims that the Court found that the two pre-preference period payments between the parties were insufficient to constitute a "baseline" course of dealings between the parties. Then, instead of finding that Ogletree failed to meet its burden on this element of its defense, the Court erroneously dispensed with the element, or in the alternative, created a baseline of ordinary dealings based on the Debtor's relationship with other law firms and/or on Ogletree's relationship with its clients—evidence more suited to determine the terms of the domestic air carrier-legal service industry under section 547(c)(2)(C). Alternatively, the Trustee argues that if the Court determines that the Debtor's two pre-preference payments to Ogletree were sufficient to determine an ordinary course of business between the parties, that the longer times of payment for the subject transfers during the preference period were well outside the ordinary course of dealings with the Debtor and Ogletree established prior to the preference period. The Court rejects all of the Trustee's arguments because the Court considered all the above-referenced *Grand* factors, the surrounding circumstances, and the evidence adduced concerning the totality of all transactions between the Debtor and Ogletree, both before the preference period, during the preference period, and after the Debtor's bankruptcy petition was filed.

As stipulated to by the parties, the limited extent of the parties' dealings prior to the services paid for during the preference period consisted of two relatively small invoices issued and paid in 1989. The invoices were for general counseling services and were paid 29 days and 42 days after issuance. The 1990 preferential payments consisted of one invoice paid 167 days after issuance and a second invoice paid 140 days after issuance for services rendered in defending against a union organizing campaign. Statistical comparisons, however, and the differing lengths of time in payment per *In re Global Distribution Network, Inc.*, 103 B.R. 949, 954–56 (Bankr.N.D.Ill.1989), do not end the inquiry nor conclusively establish that the longer the time the Debtor took to pay the latter invoices, ipso facto, makes the payments out of the ordinary course of its business with Ogletree. The Court compared the amounts and the times of payments on the two pre-preference period invoices from 1989 with that on the invoices from 1990. The Court noted that the "1989 invoices were paid much quicker." (Tr. 80). The Court found, however, that the nature of the work covered by

these 1989 invoices was different (for general counseling) and "not particularly extensive in its scope" and "[t]he amounts involved were much smaller significantly" in "marked contrast to the ... 1990 invoices ... for the union organizing campaigns...." (Tr. 80). The Court went on to opine that "it's not much of a pattern of ... preference period on which to absolutely determine whether or not the subject invoices that were paid on a longer term were paid outside the ordinary course of business." (Tr. 80–81). Thus, though limited and small, there was a pre-preference period relationship between the parties which the Court did consider and compare to the transactions within the preference period.

■ Due to the sparse pre-preference business dealings between the parties, Ogletree offered additional evidence to show the significant reasons for the difference in payment times. Deakins testified that the 1990 work performed (defending a union organizing campaign) was "substantially more intensive" than the general counseling work previously performed. (Tr. 31). Deakins further testified that the changed nature of the work performed by Ogletree led to different payments:

> Therefore, as a result of that [more intensive work], our clients will very often run up big bills very fast on union organizing campaigns and will take longer to pay them. We understand that. We cooperate with out clients in that respect. It is not too unusual that clients will wait until the whole thing is over to pay us anything.

(Tr. 33).

The Court found that this credible testimony established that the nature of the work performed was more extensive than the general counseling performed in 1989, and thus, Ogletree did not expect to be paid as quickly as it had been in 1989. (Tr. 81). Furthermore, Deakins testified that there was no agreement between the parties as to when payment would be due or made (Tr. 27), nor any unusual collection activity. (Tr. 37). Ogletree continued to work for the Debtor even after the time the Debtor filed bankruptcy. (Tr. 32). The Debtor's payment

pattern "was not out of the norm for us." (Tr. 34).

To buttress Deakins' testimony, Ogletree introduced summaries of financial records for both the Debtor and Ogletree to show that the range of the time of payments for both parties was ordinary for each. This evidence included the aging of Ogletree's receipts from other clients and the Debtor's payments to other law firms. Deakins testified that "[the Debtor's] bills were in line with what our usual practice was." (Tr. 43). Deakins personally represented Eastern Airlines and USAir in connection with union organizing campaigns. Eastern took four months to pay its bill and USAir took up to five months to pay its bill with Ogletree. (Tr. 44). There was no evidence of any unusual collection activity by Ogletree, nor that it took advantage of the Debtor's financial condition at any time. *See Grand Chevrolet,* 25 F.2d at 732. The Debtor's financial records showed that the Debtor paid its other law firms in a range of 0 to 303 days after invoice. (Ogletree Exhibit B). The Court found that this evidence established that the payments to Ogletree in 1990, which were made 140 and 167 days after issuance of the invoices, were within the range of payments from the Debtor to other law firms, including Ogletree. (Tr. 83).

■ The Trustee, however, maintains that evidence of Ogletree's receipts from its other clients, and the Debtor's payments to other law firms, has no bearing on the ordinary course of business between the Debtor and Ogletree. The Court disagrees. The Court's reliance on the additional evidence regarding Ogletree and other clients and the Debtor and other law firms was not improper. The Court did not collapse section 547(c)(2)(B) into section 547(c)(2)(C). Rather, such evidence buttressed and corroborated the conclusion that the payments made between the Debtor and Ogletree were in the ordinary course of business for each party in their dealing with each other, in light of their similar dealings with other airlines and law firms. Consequently, the Court did not err in comparatively examining payments from the Debtor to its other law firms, and those received from Ogletree from its other clients,

to determine whether the subject preference period payments were made in the ordinary course between Ogletree and the Debtor.

■ The Court rejects the Trustee's principal argument that the statistical analysis of the times of payment comparing the pre-preference invoices in 1989 with the 1990 invoices during the preference period, ipso facto, controls in determining the ordinary course of business between the parties for purposes of section 547(c)(2)(B). The Court finds that this statistical analysis does not determine, per se, if the preferential payments were outside of the parties' ordinary course of business. Certainly this mode of analysis is one factor that the Court can consider, and did in fact consider (Tr. 80), but it is not the sole ultimate determinative factor. Rather, the Court looked to the more significant factors: the different nature of the work performed during the preference period; the lack of any unusual collection activity by Ogletree; and the lack of any express payment time or terms for the payment of the subject work. These factors persuaded the Court to conclude that the subject payments made were within the ordinary course of dealings between the parties under section 547(c)(2)(B).

■ In addition, the Court rejects the Trustee's argument that Ogletree should effectively be precluded as a matter of law from establishing its section 547(c)(2) defense because of the sparse pre-preference history between Ogletree and the Debtor. The Court specifically rejected *In re Brown Transport Truckload, Inc.,* 152 B.R. 690 (Bankr.N.D.Ga.1992) which espouses the view that if there is no prior course of dealings between the parties, the creditor/transferee cannot satisfy this element. (Tr. 82). *Brown* is inapposite because there were some pre-preference transactions between the Debtor and Ogletree, albeit limited. The Court noted that "[t]he statute is perhaps deliberately generalized so that the particular facts and circumstances surrounding the debtor/creditor relation at bar can be analyzed to see if the payments made by the debtor to the creditor ... were somehow not made in the ordinary course of business." (Tr. 82). Thus, the Court concludes that

Ogletree established by a preponderance of the evidence the section 547(c)(2)(B) element of its defense that the preferential payments were made in the ordinary course of business between the parties. The Trustee has failed to prove that the Court made any manifest errors of law or fact in that regard, and has failed to rebut Deakins' testimony on this element of Ogletree's defense.

### B. *The Ordinary Business Terms in the Industry Pursuant to 11 U.S.C. § 547(c)(2)(C)*

■ Next, the Trustee argues that the evidence produced by Ogletree at trial was insufficient to determine the ordinary business terms in the domestic airline-legal service industry. Ogletree submitted the following evidence to establish this element: (1) Ogletree's accounts receivables aging for all its clients (Ogletree Exhibit A); (2) the Debtor's payments to selected law firms (including Ogletree) during the period from 1989 through March 1991 (Ogletree Exhibits B, C, and D); and (3) Deakins' testimony. Pursuant to the mandate of *Tolona Pizza,* Ogletree "must show that the payment[s] received [were] made in accordance with the ordinary business terms in the industry." 3 F.3d at 1033. The Court noted that *Tolona Pizza* provided little guidance on how to determine the relevant "industry" for purposes of section 547(c)(2)(C). (Tr. 76). Hence, the Court determined that the "fair way to try and define the relevant industry or market is between domestic air[line] carriers and lawyers that they hire." (Tr. 76). The *Tolona* court addressed the meaning of "ordinary business terms":

> "[O]rdinary business terms" refers to the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage, and that only dealings so idiosyncratic as to fall outside that broad range should be deemed extraordinary and therefore outside the scope of subsection C.

*Id.* at 1033 (citations omitted; emphasis in original). *Accord In re Meridith Hoffman Partners,* 12 F.3d 1549, 1553 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994); *In re U.S.A. Inns of*

*Eureka Springs, Arkansas, Inc.*, 9 F.3d 680, 684 (8th Cir.1993); *In re Molded Acoustical Prods., Inc.*, 18 F.3d 217, 223–24 (3d Cir. 1994) (adds that the longer the duration of the pre-petition relationship between the creditor and the debtor indicates that such relationship may depart from industry customs); *Advo–System, Inc. v. Maxway Corp.*, 37 F.3d 1044, 1050 (4th Cir.1994) (adopting Third Circuit's approach).

In *In re Energy Coop., Inc.*, 103 B.R. 171 (N.D.Ill.1986), the district court noted that courts need not "rely solely upon the previous transactions between the parties, but also may look to similar transactions between either of the parties and third persons in determining whether the transfer was 'ordinary.'" *Id.* at 176. The Court rejects the Trustee's argument that *Energy Coop* was tacitly overruled by *Tolona Pizza*. *Tolona Pizza* requires some evidence regarding what a defendant's competitors are doing in order to meet the section 547(c)(2)(C) requirement. Ogletree's competitors include other law firms who provided legal services to the Debtor, some of whom were paid quicker, and others who were paid slower than Ogletree. Such evidence under *Energy Coop* tended to corroborate Deakins' opinion that the subject payments received were within the norm or "not out of the norm for [Ogletree]." (Tr. 33–34).

Ogletree presented several pieces of evidence to establish its burden of proof. First, Deakins testified regarding Ogletree's dealings with its other air carrier clients (Eastern Airlines and USAir) and how those dealings were similar to the relationship between Ogletree and the Debtor. (Tr. 44). These other carriers, like the Debtor, took up to four or five months to pay Ogletree. *Id.* In addition, Ogletree did not initiate any special contacts or collection efforts with these carriers with respect to their unpaid invoices. *Id.* Deakins also testified that the aging reports regarding the Debtor's account were in line with the aging reports of Ogletree's other clients. (Tr. 43). Moreover, Ogletree presented evidence regarding the Debtor's payment history to its other outside law firms. This evidence established that during the two years prior to filing bankruptcy, the Debtor paid such law firms in the range from 0 to

303 days after date of the invoice. (Ogletree Exhibit B). Furthermore, Deakins, as Ogletree's managing partner in charge of its accounts receivable collection, testified that he was familiar with the range of credit practices of other law firms similar to Ogletree, and that Ogletree's practices were consistent with those of other law firms with whom it competed for legal business of domestic air carriers. (Tr. 49–50, 54–55).

The Trustee also argues that the Court's ruling in the matter at bar that Ogletree met its burden of proof with respect to the industry standard element under section 547(c)(2)(C) is at odds with the Court's prior ruling in another unrelated, yet similar, adversary proceeding, which was recently affirmed. *See Solow v. Jensen Cabinet*, No. 93 A 1488 (Bankr.N.D.Ill. Nov. 10, 1994), *aff'd*, No. 94 C 7735 slip op. (N.D.Ill. March 3, 1995). Judge Plunkett affirmed this Court's ruling in *Jensen* that the creditor failed to meet its burden under section 547(c)(2)(C) because it did not offer any evidence of the practices of its competitors. Judge Plunkett agreed with this Court that "*Tolona Pizza* requires the creditor to present some evidence of the practices of its competitors in order to establish the 'ordinary business terms' in the industry." *Id.* at 6–7. The Trustee's argument fails because different proof was adduced in the *Jensen* case on the section 547(c)(2)(C) element as opposed to the case at bar. In *Jensen*, the creditor's president admitted that he had *no* knowledge of his competitors' receivables practices. *Id.* at 7 (emphasis supplied). This is in marked contrast to Deakins' testimony in the matter at bar. Deakins did, in fact, have personal, first-hand knowledge of his competitors' practices, how they dealt with their accounts receivable, and the aging of those accounts. (Tr. 49–50, 55). Thus, the Court concludes that Deakins' testimony was sufficient to establish the section 547(c)(2)(C) element. *Accord Tolona Pizza*, 3 F.3d at 1031–33 (testimony of the creditor's executive vice president based on his personal knowledge regarding the practices of his competitors sufficient under section 547(c)(2)(C)).

Furthermore, the creditor in *Jensen* was unable to prove by a preponderance of the

evidence "the *range* of terms that encompasses the practices in which firms similar in some general way to the creditor in question engage...." *Tolona Pizza*, 3 F.3d at 1033 (emphasis in original). Rather, the only evidence the creditor in *Jensen* proffered was regarding the practices of entities similar to the Debtor, not the creditor, as *Tolona Pizza* requires. The Court found the documentary evidence buttressed by Deakins' testimony in the instant matter was sufficient to show, by a preponderance of the evidence, Ogletree's competitors' practices, as well as when the Debtor paid its other outside law firms. Hence, the Court did not commit any manifest errors of law or fact.

### C. *Deakins' Testimony Regarding the Ordinary Business Terms in the Industry*

 The Trustee asserts that the Court erred by relying on hearsay testimony of Deakins. To the contrary, Deakins testified as to his first-hand knowledge of Ogletree's payment receipt and other history with the Debtor compared to its two other airline clients, Eastern Airlines and USAir. The Trustee objected on hearsay grounds to Deakins' testimony regarding industry norms within the domestic air carrier-legal service industry, which the Court sustained. The Court allowed Deakins to testify as to his understanding and recollection of what other law firms and industry consultants had told him (Tr. 49–50). The testimony was not admitted for the truth of the matter asserted by such out-of-court declarants. Deakins was not proffered as an expert and the out-of-court declarants' statements were not admitted for the truth of the matter asserted in their statements. (Tr. 53–54). The Trustee argues that regardless of the Court's ruling, the Court improperly relied on the out-of-court declarations of third parties.

The Trustee's objection goes to the weight to be afforded Deakins' personal opinions, not the admissibility of that testimony. Deakins properly testified and was subject to cross-examination as to his first-hand personal knowledge of what he, as managing partner, understood to be the custom in the domestic air carrier-legal service industry. His was the only testimony adduced on that

point (Tr. 54–55). Though Deakins' testimony was not extensive or corroborated by other testimonial or documentary evidence, his testimony was credible and admissible, and when coupled with the documentary evidence, met the preponderance of the evidence standard for this element of section 547(c). The Trustee did not introduce any evidence to rebut Deakins' testimony. Thus, Ogletree met its burden of proof under section 547(c)(2)(C). Deakins' understanding of industry custom is not hearsay and was subject to cross-examination. Out-of-court declarations by others offered for the truth of same is hearsay, was properly excluded, and was not considered by the Court.

### V. *CONCLUSION*

For the foregoing reasons, the Court hereby denies the Trustee's motion to alter or amend the judgment entered in this adversary proceeding on January 23, 1995.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.