**In re PETERSON DISTRIBUTING, INC., Debtor.**

**Harriet E. STYLER, Trustee, Plaintiff,**

v.

**LANDMARK PETROLEUM, INC., Defendant.**

No. 2:96–CV–0165.
Bankruptcy No. 91–24224JAB.
Adversary No. 94PB–2318.

United States District Court,
D. Utah,
Central Division.

July 8, 1996.

■

---

Douglas J. Payne, Fabian & Clendenin, Salt Lake City, UT, for Defendant–Appellant.

Steven G. Loosle, Kruse, Landa & Maycock, Salt Lake City, UT, for Plaintiff–Appellee.

## MEMORANDUM DECISION AND ORDER REVERSING BANKRUPTCY COURT'S ORDER GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

WINDER, Chief Judge.

This matter is before the court on Landmark Petroleum, Inc.'s ("Landmark") appeal from the Bankruptcy Court's order granting summary judgment to Harriet E. Styler (the "Trustee") in an adversary proceeding brought in connection with the bankruptcy case of Peterson Distributing, Inc. ("Peterson"). A hearing on the appeal was held on June 14, 1996. At the hearing, Landmark was represented by Douglas J. Payne, while the Trustee was represented by Steven G. Loosle. Prior to the hearing the court had carefully reviewed the briefs and other materials submitted by each of the parties as well as certain of the authorities cited by each of the parties. Following oral argument, and after taking the matter under advisement, the court has further considered the facts and law related to this matter. The court has also read the transcript of the Bankruptcy Court's ruling from the bench regarding this matter. Having now fully considered the issues in this appeal, and good cause appearing, the court enters the following Memorandum Decision and Order.

## I. BACKGROUND

The Bankruptcy Court's November 16, 1995 ruling from the bench and the parties' briefs reveal the following undisputed facts.

Between May 3, 1991, and May 17, 1991, Landmark sold eight shipments of diesel fuel to Peterson. The credit terms required Peterson to pay for each shipment within eleven days, with a one percent discount if payment was made within ten days. Peterson made five payments to Landmark, totalling $28,-627.51, during May and early June of 1991 which were received by Landmark three to eight days late under the credit terms. No course of dealings existed between Peterson and Landmark prior to the diesel fuel shipments and subsequent payments just described.

Peterson filed a petition for bankruptcy on June 28, 1991. Accordingly, the five payments made to Landmark during May and June of 1991 fell within the 90–day "preference period" prior to the petition for bankruptcy during which Peterson is presumed to have been insolvent. See 11 U.S.C. § 547(f) (1993). On August 15, 1994, the Trustee brought an adversary proceeding against Landmark to avoid the five "preferential" transfers made to Landmark and, thereby, recover the $28,627.51 for the benefit of all the creditors. The Trustee then brought a motion for partial summary judgment on all issues except insolvency. However, because Landmark withdrew its insolvency defense the Trustee's motion for partial summary judgment was converted into a motion for summary judgment dispositive of the entire adversary proceeding.

In response to the Trustee's motion for summary judgment, Landmark relied on the "ordinary course of business" exception, codified at 11 U.S.C. § 547(c)(2) (1993), to the Trustee's preference avoidance powers. Landmark argued that because there was no course of dealings between the parties prior to the preference period, that it was appropriate for the Bankruptcy Court to consider both Landmark's and Peterson's dealings with third parties in determining whether the late payments at issue were sufficiently ordinary to warrant the protection of the ordinary course of business exception. Landmark offered evidence[1] that: (1) it was an ordinary part of Landmark's business to sell diesel fuel products on open account to customers such as Peterson; (2) it was an ordinary part of Peterson's business to purchase diesel fuel from refiners such as Landmark on open account; (3) during the period from 1989 to 1991, it was not unusual for Peterson to mail a payment on invoices for product between three and five days after the due

---

1. Landmark's briefs list facts which are supported by references to affidavits which the court assumes were provided to the Bankruptcy Court.

date stated on the invoice; (4) during 1991, it was not unusual for Landmark to accept payments that were mailed three to four days after the invoice date in 1991; (5) during May and June of 1991, accounts payable average days outstanding of the wholesalers of petroleum and petroleum products, except for bulk stations and terminal industry, were within the range of ten to twenty-three days; and (6) during May and June of 1991, accounts receivable average days outstanding of the wholesalers of petroleum bulk stations and terminal industry was between eleven and twenty-six days.

However, the Bankruptcy Court rejected Landmark's argument, adopted the rationale of *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization)*, 957 F.2d 239 (6th Cir.1992), and apparently refused to consider any evidence of Landmark's and Peterson's course of dealings with third parties in determining whether the course of conduct between Landmark and Peterson during the preference period was ordinary. Accordingly, the Bankruptcy Court found that because Landmark and Peterson had no pre-preference period relationship establishing the practice of late payments, the ordinary business exception did not apply as a matter of law and that the Trustee was entitled to judgment in the amount of $28,627.51. Landmark appeals this decision and the court now considers the issues raised by the appeal.

## II. STANDARD OF REVIEW

This case involves Landmark's appeal of the Bankruptcy Court's ruling made orally on November 16, 1995, and made by written order on February 19, 1996. In reviewing the propriety of the Bankruptcy Court's order in this case, this court must "apply the same standards of review as those governing appellate review in other cases." *In re Perma Pac. Properties*, 983 F.2d 964, 966 (10th Cir.1992). This court, therefore, must affirm the Bankruptcy Court's findings of fact unless those findings are clearly erroneous. *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir.1990). A finding of fact is clearly erroneous when the court, after reviewing the record is "left with the conviction

that a mistake has been made." *LeMaire v. United States*, 826 F.2d 949, 953 (10th Cir. 1987). Where the Bankruptcy Court has made conclusions of law, however, this court is required to conduct a de novo review of the record and reach an independent legal conclusion. *In re Davidovich*, 901 F.2d at 1536.

More specifically, the determination under 11 U.S.C. § 547(c)(2) of whether certain payments meet the requirements of the ordinary course of business exception is a "uniquely factual decision subject to review on a clearly erroneous standard." *In re Classic Drywall*, 121 B.R. 69, 71 (D.Kan. 1990). However, such findings of fact are "reviewed for plain error when based upon a misunderstanding of law." *Id.*

## III. DISCUSSION

The bankruptcy code imposes the following conditions in order for a trustee to avoid payments made by a debtor to a creditor during the preference period and, thereby, require the creditor to disgorge the money for the benefit of all the creditors:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

\*    \*    \*    \*    \*    \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1993). As mentioned in Section 547(b), Section 547(c) contains certain exceptions to a trustee's preference avoidance powers including the ordinary course of business exception which provides:

(c) The trustee may not avoid under this section a transfer—

\* \* \* \* \* \*

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and transferee; and

(C) made according to ordinary business terms.

11 U.S.C. § 547(c)(2) (1993).

Landmark does not dispute that the Trustee can prove all the requirements of Section 547(b). Rather, Landmark contends that it can prove all the requirements of the ordinary course of business exception. The parties do not dispute that subsections (A) (that the debt was incurred as part of a business transaction that is ordinary for both the debtor and creditor) and (C) (that the payments made by the debtor were ordinary as compared to standards prevailing in the relevant diesel fuel industry) are met in this case. However, the parties dispute whether Landmark can prove subsection (B), that the "transfer was made in the ordinary course of business or financial affairs of the debtor and transferee."

The Trustee points out that all five payments which Peterson made to Landmark during the preference period were "late" according to the invoice terms and are, therefore, presumptively nonordinary.[2] The Trustee contends that the only way Landmark can overcome the presumption of nonordinary payments is to show that there was an established practice of late payments *between* Peterson and Landmark before the preference period. Since there was no rela-tionship between Peterson and Landmark prior to the preference period, the Trustee maintains that as a matter of law Landmark cannot overcome the presumption of nonordinariness. The Bankruptcy Court apparently agreed with the Trustee's arguments and granted summary judgment to the Trustee.

Landmark, on the other hand, asserts that absent the existence of a pre-preference relationship between Peterson and Landmark that the Bankruptcy Court may consider evidence that late payments were ordinary as between Landmark and third parties who purchased diesel fuel and as between Peterson and third parties who sold diesel fuel. Landmark claims that the evidence of Peterson's and Landmark's relations with third parties—specifically, that during the period from 1989 to 1991, it was not unusual for Peterson to mail a payment on invoices for product between three and five days after the due date stated on the invoice and during 1991, it was not unusual for Landmark to accept payments that were mailed three to four days after the invoice date—overcomes the presumption that the five late payments during the preference period were nonordinary. However, the Bankruptcy Court apparently rejected this argument and refused to consider this evidence, holding that an absence of pre-preference relations between Peterson and Landmark renders preference period late payments nonordinary as a matter of law.

Although the Tenth Circuit Court of Appeals has not addressed this issue, a number of other courts have done so with divided results. The Bankruptcy Court adopted the rationale of *Logan v. Basic Distribution Corp. (In re Fred Hawes Organization)*, 957 F.2d 239 (6th Cir.1992) (*"Hawes"*), which involved a trustee who sought to avoid two late payments made by an electrical subcontractor to a materials supplier during the 90–day preference period. Despite testimony during trial that neither this particular creditor nor other creditors in the same industry customarily enforced the literal invoice terms, the bankruptcy court found in favor of

---

**2.** A number of courts have determined that late payments are presumptively nonordinary. *See, e.g., Logan v. Basic Distrib. Corp. (In re Fred Hawes Org.)*, 957 F.2d 239, 244 (6th Cir.1992); *In re Xonics Imaging*, 837 F.2d 763, 767 (7th Cir.1988).

the trustee and the creditor appealed. *Id.* at 242. On appeal, the Sixth Circuit defined the requirements of the ordinary course of business exception:

> The two subsections of § 547(c)(2) under review comprise a subjective and objective component respectively. The subjective prong (subsection (B)) requires proof that the debt and its payment are ordinary in relation to other business dealings between that creditor and that debtor. The objective prong (subsection (C)) requires proof that the payment is ordinary in relation to the standards prevailing in the relevant industry.

*Id.* at 244. Turning specifically to the subjective prong, subsection (B), the Sixth Circuit noted that the late payments were presumptively nonordinary and that this presumption could only be overcome "upon a showing that late payments were the normal course of business between the parties." *Id.* The court rejected the "erroneous argument that absent a long course of business between the parties, a court should look to industry standards to determine whether a given payment is ordinary." *Id.* at 245. The court concluded that because "§ 547(c)(2) is clearly framed in the conjunctive ... Congress intended that an ordinary payment be both ordinary between those particular parties and ordinary in the industry as a whole." *Id.* The court reasoned that to allow evidence of relations between the creditor and third parties and the debtor and third parties to satisfy subsection 547(c)(2)(B) would collapse this prong with subsection 547(c)(2)(C) which requires a showing that the payment is ordinary as compared to industry standards. *Id.*

The Trustee also cites *In re Xonics Imaging,* 837 F.2d 763 (7th Cir.1988), which involved a trustee who sought to avoid a commercial tenant's late rent payments to its commercial landlord. Holding that the trustee was entitled to avoid the preferential late payments, the Seventh Circuit stated:

> This case, however, is not one where the parties to a contract adopt an extra-contractual practice that becomes the ordinary course of business between them. The

only payment [the debtor] made to [the creditor] before the 90–day preference period was made within the grace period provided for in the lease. Obviously a single, timely payment could not establish a pattern, history, or course of dealings in which late payment was consistent with the parties' practice though contrary to their contract. [The creditor's] counsel suggested at argument that late payments made within the preference period could establish the ordinary course of business between the parties if as in this case insolvency occurred early in the parties' relationship. We hesitate to agree, especially when the *only* evidence that late payments were within the ordinary course of business is that the debtor made such payments after he became insolvent. We hold that the conduct of a debtor after becoming insolvent, in failing to make payments within the time required by his contract with the creditor is presumptively nonordinary.

*Id.* at 767 (emphasis added). Although the court held that when late payments during the preference period are the *only* evidence of the ordinary course of business, such payments are presumptively nonordinary, the court stated that it "need not decide whether the presumption might ever be overcome." *Id.* Thus, the court specifically reserved the issue of whether evidence *in addition to* preference period late payments could overcome the presumption that such payments are nonordinary. In the present case, of course, Landmark offers more than evidence of the five preference period late payments to prove that the late payments were ordinary. Landmark contends that the Bankruptcy Court should also consider its evidence that late payments were ordinary as between Peterson and other diesel fuel suppliers and Landmark and other diesel fuel purchasers.

Landmark also cites several cases to support its position. *Solow v. Ogletree, Deakins, Nash, Smoak & Stewart (In re Midway Airlines),* 180 B.R. 1009 (Bankr.N.D.Ill.1995) (*"Midway Airlines"*), involved a trustee who sought to avoid two late payments the debtor made to its law firm during the preference

period. At trial the law firm presented evidence regarding the debtor's payments to other lawyers, as well as a summary of the law firm's aged accounts receivable from other clients. *Id.* at 1011. The bankruptcy court found in favor of the law firm and the trustee moved for reconsideration, arguing that the bankruptcy court erred because: (1) there was a lack of pre-preference period transactions between the debtor and creditor which precluded a finding that the late payments were ordinary; and (2) the bankruptcy court improperly "mixed the elements of section 547(c)(2)(B) and (c)(2)(C)" by considering evidence of the debtor's and creditor's relations with third parties in determining what was ordinary between the debtor and creditor. *Id.* at 1011, 1012–13. However, the court rejected these arguments, concluding:

> The Court's reliance on the additional evidence regarding [the creditor] and other clients and the Debtor and other law firms was not improper. The Court did not collapse section 547(c)(2)(B) into section 547(c)(2)(C). Rather, such evidence buttressed and corroborated the conclusion that the payments made between the Debtor and [the creditor] were in the ordinary course of business for each party in their dealing with each other, in light of their similar dealings with other airlines and law firms. Consequently, the Court did not err in comparatively examining payments from the Debtor to its other law firms, and those received from [the creditor] from its other clients, to determine whether the subject preference period payments were made in the ordinary course between [the creditor] and the Debtor.

*Id.* at 1014–15. Finally, the court noted that the law firm should not be "effectively ... precluded as a matter of law from establishing its section 547(c)(2) defense because of the sparse pre-preference history" between the parties. *Id.* at 1015. *See also Energy Co-op. v. Fina Oil & Chem. Co. (In re Energy Co-op.),* 103 B.R. 171, 176 (N.D.Ill.1986) (holding that in determining whether book transfer in lieu of physical transfer of petroleum product was sufficiently ordinary to satisfy § 547(c)(2)(B) the court "need not, however, rely solely upon the previous transactions between the parties, but also may look to similar transactions between either of the parties and third persons in determining whether the transfer was 'ordinary.' ").

Similarly, *Remes v. ASC Meat Imports (In re Morren Meat & Poultry Co.),* 92 B.R. 737 (W.D.Mich.1988) *("Morren Meat "),* involved a trustee who sought to avoid a meat wholesaler's payments to a meat supplier. The wholesaler had purchased meat from the supplier only once and paid for it in two installments during the preference period. *Id.* at 737. The trustee argued that it was entitled to avoid the two transfers because both were late according to the invoice terms and because the debtor's and creditor's relations with third parties were not relevant. *Id.* at 739. However, the court affirmed the bankruptcy court's ruling in favor of the creditor, stating that:

> This Court concurs that the course of dealing between the parties themselves is indeed a factor to consider and that § (B) contemplates an evaluation of the parties prior subjective dealings, when such exist. However, this Court is not convinced that § (B) requires a history of prior dealings as a *sine qua non* in order to afford a transferee the protections of § 547(c)(2). Section (B) specifies a transfer "made in the ordinary course of business or financial affairs of the debtor and transferee." The statute states: "affairs of the debtor *and* the transferee," (emphasis added) not "affairs between the debtor and the transferee." The existence of prior dealings between the parties would definitely aid this Court in assessing the ordinary character of the transfers, but the absence of such prior dealing certainly does not preclude this Court from determining that the transfers were ordinary for purposes of § 547(c)(2).

*Id.* at 740.

After having considered the above cases and the arguments presented in the briefs and at oral argument, the court is convinced that the Bankruptcy Court's order granting summary judgment in favor of the Trustee should be reversed for the following reasons: (1) the plain language of subsection 547(c)(2)(B) does not require the existence of

pre-preference period relations between Peterson and Landmark; (2) allowing evidence of Peterson's and Landmark's relations with third parties to satisfy subsection 547(c)(2)(B) does not collapse that prong into subsection 547(c)(2)(C); and (3) allowing evidence of Peterson's and Landmark's relations with third parties promotes the policies underlying the ordinary course of business exception.

First, the plain language of subsection 547(c)(2)(B) does not require the existence of pre-preference period relations between the Peterson and Landmark under the facts of this case. As the *Morren Meat* Court noted, the "statute states: 'affairs of the debtor *and* transferee,' (emphasis added) not 'affairs between the debtor and the transferee.' " *Id.* Accordingly, while subsection 547(c)(2)(B) "contemplates an evaluation of the parties [pre-preference period] subjective dealings ... when such exist," such dealings are not a requirement for finding that the preference period payments were ordinary. *Id.*

The Trustee argues that this plain reading of the statutory language is improper because such a reading results in the collapsing of subsection 547(c)(2)(B) (the subjective prong) into subsection 547(c)(2)(C) (the objective prong) which requires that the payments comport with the standards prevailing in the relevant industry. Of course, the court agrees that a statutory interpretation should not render any provision redundant. However, the court disagrees that subsection 547(c)(2)(C) is rendered redundant if the court allows evidence of Peterson's and Landmark's relations with third parties to satisfy subsection 547(c)(2)(B). Subsection 547(c)(2)(C) is objective in that it requires a showing that the payments at issue comport with the ordinary course of business in the relevant industry, in this case the diesel fuel industry. Subsection 547(c)(2)(B) is subjective in that it requires a more particularized showing that the payments at issue comport with the ordinary course of business as established between the parties before the preference period or, absent such a relationship, with the ordinary course of business as established between the creditor and third parties and the debtor and third parties.[3] The court concludes that both the *Hawes* Court and Bankruptcy Court failed to discern the difference between the ordinary course of business in the industry and the ordinary course of business of the particular creditor and debtor involved in the transaction.[4] Landmark offered evidence of both

---

**3.** These prongs are not the same, a fact which is demonstrated by a simple hypothetical. In industry X it is customary for sellers to sell product Y on open account to their customers with invoice terms which require payment within 10 days of delivery ("net 10"). However, it is also customary for sellers not to enforce the invoice terms. The average accounts receivable outstanding in industry X is 25 to 30 days past due. Debtor purchased product Y from Creditor and made six payments to Creditor during the preference period. The parties had no pre-preference period relationship. All six payments were 27 days late according to the "net 10" payment term in the invoices. However, the evidence reveals that Creditor customarily enforces the payment term with other customers and has an average accounts receivable outstanding of only two days past due. Debtor customarily pays for deliveries of product Y relatively timely and has an average accounts payable outstanding of only seven days past due. Assuming there are no other factors relevant to the determination of ordinariness, under these facts Creditor has met the requirements of subsection 547(c)(2)(C) because payments 27 days late are ordinary in industry X. However, Creditor cannot meet the requirements of subsection 547(c)(2)(B) because payments 27 days late are not ordinary as between the Creditor and its other customers or as between the Debtor and its other suppliers.

**4.** The *Hawes* Court rejected the "erroneous argument that absent a long course of business between the parties, a court should look to *industry standards* to determine whether a given payment is ordinary." *Hawes,* 957 F.2d at 245 (emphasis added). However, the evidence offered by the creditor in that case was that "it [was] not the industry standard, *nor [the creditor's] custom,* to follow the literal terms of sale as set forth in an invoice or monthly billing statement." *Id.* at 242 (emphasis added). Likewise, the Bankruptcy Court stated that "Landmark argues in relation to the second prong of the ordinary course defense that where, as here, there is no prior course of dealing between the parties it is appropriate for the court to look to *the parties dealings in other transactions.* Landmark takes the position that because the parties dealings were not unusual when compared to *standards in the industry,* the court should find that the transfers are not avoidable. * * * Hawes held that the court may not look to *an industry standard such as between Landmark and its other customers* to satisfy Section 547(c)(2)(B). I conclude that this court must treat each element of Section

the course of business in the diesel fuel industry[5] and the ordinary course of business as between Peterson and other suppliers of diesel fuel and as between Landmark and other purchasers of diesel fuel.[6]

■■■ Moreover, allowing evidence of a creditor's and a debtor's relations with third parties promotes the policy objective underlying the ordinary course of business exception to a trustee's avoidance powers. The general purpose of Section 547(b) trustee avoidance powers is to (1) discourage unusual collection activity by creditors and unusual payment activity by a debtor which favors certain creditors over others and may precipitate bankruptcy; and (2) allow a trustee to avoid those unusual and preferential payments and recoup the money for the benefit of all creditors. *Fiber Lite Corp. v. Molded Acoustical Prod. (In re Molded Acoustical Prod.),* 18 F.3d 217, 222 (3rd Cir.1994) *("Molded Acoustical").* As the Tenth Circuit has noted the "purpose of the section 547(c) defenses is to encourage trade creditors and other suppliers of goods and services to continue dealing with troubled businesses without fear of the trustee's avoidance powers." *Johnson v. Barnhill (In re Antweil),* 931 F.2d 689, 693 (10th Cir.1991), *aff'd,* 503 U.S. 393, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) *("Antweil").* This allows the "distressed debtor ... to kindle its chances of survival without a costly detour through, or a humbling ending in, the sticky web of bankruptcy." *Molded Acoustical,* 18 F.3d at 219. In order to encourage creditors to continue dealing with troubled businesses, "it is important to protect the ordinary commercial expectations of the parties." *Antweil,* 931 F.2d at 693. The three requirements of the ordinary course of business exception to the trustee's avoidance powers ensure that a particular transaction is that of a "normal debtor-creditor relationship[ ]" and not so "unusual [that it] threaten[s] to heighten the likelihood of the debtor filing for bankruptcy." *Molded Acoustical,* 18 F.3d at 224. If the court were to adopt the Trustee's position that only creditors with significant prepreference period relations with debtors can make a showing that late payments are ordinary, then creditors would be deterred from establishing new relationships with troubled debtors. Such deterrence, which is contrary to the goals of Section 547(c), is unnecessary given that a creditor can make a satisfactory showing that its preference period relations with a debtor were not unusual by offering evidence of its ordinary course of relations with other customers and the debtor's ordinary course of relations with other creditors.

In short, the court is persuaded that the Bankruptcy Court may consider evidence of Peterson's and Landmark's relations with third parties in determining whether Landmark has met its burden of proving by a preponderance of the evidence that the late payments at issue were ordinary. Because the Bankruptcy Court apparently did not consider this evidence, its order granting summary judgment to the Trustee is reversed and the case is remanded for further consideration. The Bankruptcy Court, of course, should weigh Landmark's evidence against any evidence suggesting that the

547(c)(2) separately and I adopt the rationale set forth in Hawes." *See* Bankruptcy Court's November 16, 1995 Ruling from the Bench (emphasis added). The Bankruptcy Court used the concepts of the parties' dealings with others and the industry standard interchangeably. The Bankruptcy Court was also mistaken that Landmark simply "takes the position that because the parties dealings were not unusual when compared to standards in the industry" that it has met the requirements of Section 547(c)(2). Rather, Landmark has also offered evidence that the parties' dealings were not unusual when compared to Peterson's and Landmark's dealings with third parties in similar transactions.

5. Landmark offered evidence that: (1) during May and June of 1991, accounts payable average days outstanding of the wholesalers of petroleum and petroleum products, except for bulk stations and terminal industry, were within the range of 10 to 23 days; and (2) during May and June of 1991, accounts receivable average days outstanding of the wholesalers of petroleum bulk stations and terminal industry was between 11 and 26 days.

6. Landmark offered evidence that: (1) during the period from 1989 to 1991, it was not unusual for Peterson to mail a payment on invoices for product between three and five days after the due date stated on the invoice; and (2) during 1991, it was not unusual for Landmark to accept payments that were mailed three to four days after the invoice date in 1991.

payments were not ordinary. *See, e.g., Sulmeyer v. Suzuki (In re Grand Chevrolet)*, 25 F.3d 728, 732 (9th Cir.1994) (listing a number of factors which may be considered in determining whether payments are ordinary). Absent a misunderstanding of the applicable law, the Bankruptcy Court's final determination under 11 U.S.C. § 547(c)(2) of whether the payments meet the requirements of the ordinary course of business exception is a "uniquely factual decision subject to review on a clearly erroneous standard." *In re Classic Drywall*, 121 B.R. 69, 71 (D.Kan. 1990).

#### IV. *ORDER*

Accordingly, and based on the foregoing reasons, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Bankruptcy Court's order granting the Trustee's motion for summary judgment is REVERSED;

2. The matter is REMANDED for proceedings consistent with this opinion; and

3. This Order shall serve as the order of the court and no further order need be prepared by counsel.